## LAMB v. ANDERSON.

1. EQUITY—JUDGMENT AL LAW.—A court of equity, upon a proper show-
   ing, or where at law the defense insisted on was inadmissible, may
   entertain a bill to set aside and annul a judgment obtained at law.
2. PRACTICE—TESTIMONY.—A party, attending the examination of witnesses
   in an equity suit, is bound to make and take his objections before the
   officer taking the testimony, and to present them at the hearing of the
   cause ;  they cannot be taken for the first time on appeal.

(1 *Chand.* 224.)

APPEAL from the late District Court for *Iowa* County.

The bill in this cause was filed by *Lamb*.  It, in brief,
alleged that one Carrington made a draft on the appellee, *E.
Lamb*, J. Woods and J. E. Coyle, in favor of *Anderson*, for
the sum of $100, on demand ; which was accepted by the
appellee.  That at the time the draft was made, the appellee,
Woods and Coyle were trustees of a school district, known

as "Big Spring school district," in Iowa county, and that, at the time, the drawer was the employed teacher of the school. That, at the time of the making of the draft, Carrington was the debtor of *Anderson*, and *Lamb* accepted, upon the supposition and expectation that the other trustees would .also have accepted the same, as it was understood and agreed they should do, and as a condition upon which it was drawn, they would; and that the draft should stand as security for the indebtedness of Carrington to *Anderson*, and that the money thereon would be paid when the trustees should obtain the school money from the county treasurer thereafter, and that the draft was accepted by *Lamb* upon this agreement and understanding, and that Woods and Coyle would also accept the same with him. That in the year following, *Lamb* was a school commissioner, but not a trustee, and drew from the county treasurer the school money belonging to the school district, in bills upon the Mineral Point Bank, which at that time were current at par; and on the same day he and *Anderson* met, when he, *Lamb*, informed him of the fact, and stated that he was ready to pay the draft out of those moneys, and informed him what kind of money it was, but that he had it not then with him; that *Anderson* seemed to be and expressed himself satisfied; that *Lamb* then paid him five dollars out of his own private funds at his request, but not upon the draft; that shortly afterwards *Anderson* paid to .James Woods, named in the bill, and who at the time was one of the trustees of the same school district aforesaid, the money drawn as aforesaid, and a portion thereof was called for by *Anderson*, who was told by Woods that it would be paid to him when he presented the said draft.

That afterwards *Anderson* commenced a suit at law against *Lamb*, upon the draft accepted by him, and recovered a judgment against him for the amount thereof, owing to the fact that, by the strict rules of the common law, the court could not receive his evidence of an equitable defense; that an exe-

cution had been issued upon such judgment, which was sought to be enforced.

There was a prayer for an injunction to stay all further proceedings upon the execution, and that at the hearing of the cause it might be decreed to be stayed perpetually and for general relief. An injunction was granted to stay further proceedings upon the execution.

The answer of *Anderson* set up the indebtedness of Carrington to him of about $100, and securities taken from him to pay the debt, and also the draft drawn by *Lamb* as having been accepted by him for the use of Carrington. That upon the delivery of the draft, he gave up to Carrington the securities which he held for the debt due him, and agreed to release Carrington from the payment of his debt; alleges that at the time of accepting the draft, it was agreed between *Anderson* and Carrington that it should be paid in "lawful money of the states." That on presenting the draft to *Lamb* for acceptance, he wrote on it, "we accept the within order," and subscribed his name thereto; denies that Coyle was, at the time of the date of draft, a trustee, etc., and not a resident of the district; and that *Lamb* was the principal acting trustee, and did the principal part of the official business; denies that it was understood, at the time the draft was drawn by Carrington, he was indebted to *Anderson* as charged in the bill; and also denies that at the time it was drawn it was understood that it was not to be paid until the school money should be drawn; that when he received the draft, he understood *from the wording of it*, that it was to be drawn on demand; denies that he understood the undertaking of *Lamb* was as trustee of said district; admits that on the 1st of April, 1841, he had a conversation with *him* as stated in the bill, and received from him five dollars, but denies that he (*Anderson*) then informed him that he, as school commissioner, had drawn the money to be paid to the trustees as school money; denies that *Lamb* offered to loan the five dollars paid

*him*, when he so paid it, and that he has never since demanded re-payment of the same ; denies that he ever called on Woods for the payment of the draft, but admits that he was at the house of Woods, and was informed by him that he had money left in his hands to pay it. *Anderson* inquired what sort of money it was, and Woods replied that it was upon the Bank of Mineral Point, and he replied that he would not take it, and that Woods neither then nor afterwards tendered him the money, but simply said he had it for him ; admits the commencement of the suit at law and the recovery of the judgment.

Proofs were taken, and on the hearing the district court sustained the bill and decreed a perpetual stay of execution on the judgment at law.

From this decree the defendant, *Anderson*, appealed to this court.

*Samuel Crawford*, for the appellant, objected that in taking the testimony in the case, the justice before whom it was taken did not certify that the witnesses were legally sworn, and that, therefore, such testimony ought to have been rejected.

That a party, filing a bill of discovery, to relieve himself from a judgment upon the ground of an equitable defense, which could not be interposed in the suit at law, and therein alleging matters, the nature of which was to confer jurisdiction in equity to review and annul the judgment, was bound and concluded by the answer of the defendant, and was not authorized in such a case to disprove the answer. 2 Story, 499.

*M. M. Cothren*, on the part of the appellee, insisted that a court of equity would and did possess jurisdiction to relieve a party against a judgment at law, where he had an equitable defense which could not be available at law ; that though the party filing his bill, defended the suit at law, he was not barred from a resort to this court, in such a case ; that a party defendant, though he had no adequate defense at law,

was bound to defend the suit, in order to confer jurisdiction upon a court of equity to entertain his bill; and the better to enable the court of equity to see that he offered evidence in the suit at law, which could not there be admitted, but which was admissible in equity, and to this point cited 2 Story, 217.

STOW, C. J., made a memorandum of the opinion of the court, to the effect, that upon the matters alleged in the bill, a court of equity had jurisdiction over the subject-matter of the suit at law, and in this case had very properly exercised it; that the bill contained the statement of a case, conferring upon a court of equity jurisdiction to act, and showing that the complainant was entitled to be relieved from the judgment obtained at law against him; that the answer of the defendant was evasive, and did not meet and refute the allegations of the bill; that where parties appeared on the examination of witnesses (as was the case in this cause in the court below) before the officer taking their depositions, the parties were bound *there* to take exceptions to any informality which may have occurred on such examination; and if that was not done, the party, whose duty it was to have made objection, was concluded in this court, and could not, on appeal, make such objection, for the first time, to defeat the ends of justice.

The decree of the court below was affirmed.